UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff,*<br><br>v.<br><br>INCO LIMITED, and<br>FALCONBRIDGE LIMITED,<br><br><br>        *Defendants.* | Case No. 1:06CV01151<br><br>Judge: Rosemary M.Collyer<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP: 06/23/2006 |

**HOLD SEPARATE STIPULATION AND ORDER**

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

I.

DEFINITIONS

As used in this Hold Separate Stipulation and Order:

    A.    "Acquirer" means the entity or entities to whom defendants divest the Divested Business.

    B.    "Acquisition of Falconbridge" means Inco's satisfaction of the Minimum Tender Conditions pursuant to Inco's Offer to Purchase all of the Outstanding Shares of Falconbridge, dated October 24, 2005, as amended, and having obtained Foreign Competition Clearance, or Inco's otherwise gaining control of Falconbridge.

C. "Divested Business" means Falconbridge Nikkelverk A/S, Falconbridge, U.S., Inc. ("FUS"), Falconbridge Europe S.A. ("FESA"), Falconbridge (Japan) Limited ("FJKK"), and Falconbridge International Limited ("FIL"), including:

1. all tangible assets used in the development, production, servicing, and sale of the Nikkelverk Refinery Products, including but not limited to the Nikkelverk Refinery; all real property; any facilities used for research, development, and engineering support, and any real property associated with those facilities; manufacturing and sales assets, including capital equipment, vehicles, supplies, personal property, inventory, office furniture, fixed assets and fixtures, materials, on- or off-site warehouses or storage facilities, and other tangible property or improvements; all licenses, permits and authorizations issued by any governmental organization; all contracts, agreements, leases, commitments, and understandings; all customer contracts, lists, accounts, and credit records; and other records relating to the Divested Business;

2. all intangible assets that have been used exclusively or primarily in the development, production, servicing, and sale of the Nikkelverk Refinery Products, including but not limited to all patents, licenses and sublicenses, intellectual property, trademarks, trade names, service marks, service names (including the product or trade name "SuperElectro" or any variation thereof), technical information, computer software and related documentation, know-how, trade secrets, drawings, blueprints, designs,

2

design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, and all manuals and technical information provided to the employees, customers, suppliers, agents or licensees of the Divested Business, provided that with respect to any such intangible assets relating to metal separation or purification processes, at the option of the Acquirer defendants may retain a non-exclusive, non-transferable, fully paid-up license(s) to or copy of such intangible assets;

3. a non-exclusive, non-transferable, fully paid-up license(s) for the use of the name "Falconbridge," the duration and terms of which shall be negotiated by the defendants and the Acquirer and limited to the field of use of the Nikkelverk Refinery Products, provided that any such license(s) may be transferable to any future purchaser of the Nikkelverk Refinery;

4. a non-exclusive, non-transferable, fully paid-up license(s) for use of any intangible asset that has been used by both the Divested Business and any of Falconbridge's non-divested businesses, provided that such license(s) may be transferable to any future purchaser of Nikkelverk Refinery; and

5. all research data concerning historic and current research and development efforts conducted at or for the Divested Business, including designs of experiments, and the results of unsuccessful designs and experiments.

The term "Divested Business" shall not include tangible or intangible assets exclusively used in, or personnel exclusively responsible for, the production or sale of products other than the Nikkelverk Refinery Products.

D. "Falconbridge" means defendant Falconbridge Limited, a Canadian corporation with its headquarters in Toronto, Canada, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E. "Feedstock" means nickel-in-matte and other products and intermediate compounds constituting refinery feed sources suitable for refining at Nikkelverk Refinery.

F. "High-Purity Nickel" means refined nickel of sufficient purity and chemical composition that it can be utilized in super alloys used for safety-critical applications.

G. "Inco" means defendant Inco Limited, a Canadian corporation with its headquarters in Toronto, Canada, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

H. "Nikkelverk Refinery" means the nickel, copper, cobalt, and precious metals refinery owned by Falconbridge's subsidiary Falconbridge Nikkelverk A/S and located in Kristiansand, Norway.

I. "Nikkelverk Refinery Products" means the finished nickel, copper, cobalt, precious metals, and other products produced at the Nikkelverk Refinery.

## II.

## OBJECTIVES

The Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Divested Business, along with secure sources of Feedstock, for the purpose of ensuring the establishment of a viable competitor in the production and sale of High-Purity Nickel in order to remedy the anticompetitive effects that the United States alleges would otherwise result from Inco's acquisition of Falconbridge. This Hold Separate Stipulation and Order ensures that, prior to such divestiture and arrangements for secure sources of Feedstock, the Divested Business is operated as a competitively independent, economically viable, and ongoing business concern that will remain independent and uninfluenced by the proposed consummation of Inco's acquisition of Falconbridge, and that competition is maintained during the pendency of the ordered divestiture.

## III.

## JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of plaintiff's Complaint alleging that the proposed acquisition of Falconbridge by Inco would violate Section 7 of the Clayton Act (15 USC §18), and the parties do not object either to the Court's exercise of personal jurisdiction over them in this case, or to the propriety of venue of this action in the United States District Court for the District of Columbia. The defendants authorize Howrey LLP to accept service of all process in this matter on their behalf.

IV.

## COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16), and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court.

B. Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending entry of the Final Judgment by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C. Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

D. This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E. In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above; or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final

6

Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F.   Defendants represent that the divestiture ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

V.

PRESERVATION OF ASSETS

After entry of this Hold Separate Stipulation and Order and until the Acquisition of Falconbridge:

A.   Falconbridge shall preserve, maintain, and continue to operate the Divested Business as an ongoing, economically viable competitive business.

B.   Falconbridge shall use all reasonable efforts to maintain the sales and revenues of the products produced by or sold by the Divested Business, and shall maintain at 2005 or previously approved levels for 2006, whichever are higher, all promotional, advertising, sales, technical assistance, marketing and merchandising support for the Divested Business.

C.   Falconbridge shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divested Business as an economically viable and competitive, ongoing business, consistent with the requirements of Section V(A).

D. Falconbridge shall take all steps necessary to ensure that the Divested Business is fully maintained in operable condition at no less than its current capacity and sales, and shall maintain and adhere to normal repair and maintenance schedules for the Divested Business.

E. Falconbridge shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge or otherwise dispose of any of the Divested Business.

F. Falconbridge's employees with primary responsibility for the research, development, operation, and sale of Nikkelverk Refinery Products and procurement of Feedstock from third parties for the Divested Business shall not be transferred or reassigned to other areas within the company except for transfer bids initiated by employees pursuant to Falconbridge's regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of any such transfer.

G. Falconbridge shall take no action that would jeopardize, delay, or impede the sale of the Divested Business.

## VI.

## HOLD SEPARATE PROVISIONS

Beginning at the time Inco acquires the first share of Falconbridge common shares pursuant to Inco's Offer to Purchase All of the Outstanding Shares of Falconbridge, dated October 24, 2005, as amended, and until the divestiture required by the Final Judgment has been accomplished:

A. Defendants shall preserve, maintain, and continue to operate the Divested Business as an independent, economically viable ongoing competitive business, with management, research, design, development, promotions, marketing, sales, and operations of such assets held entirely

separate, distinct, and apart from Inco's other operations. Inco shall not coordinate its production, marketing, or terms of sale of any products with those produced by or sold under the Divested Business. Within twenty (20) days after entry of this Hold Separate Stipulation and Order, Inco will inform the United States of the steps the company has taken to comply with this Hold Separate Stipulation and Order.

    B.    Defendants shall take all steps necessary to ensure that (1) the Divested Business will be maintained and operated as an independent, ongoing, economically viable and active competitor in the production and sale of High-Purity Nickel; (2) management of the Divested Business will not be influenced by Inco, except to the extent necessary to carry out Inco's obligations under this Hold Separate Stipulation and Order and the proposed Final Judgment; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning the Divested Business will be kept separate and apart from Inco's other operations.

    C.    Defendants shall use all reasonable efforts to maintain the research, development, sales, and revenues of the products produced or sold by the Divested Business, and shall maintain at 2005 levels or previously approved levels for 2006, whichever are higher, all research, development, product improvement, promotional, advertising, sales, technical assistance, marketing and merchandising support for any product developed, produced, or sold by the Divested Business.

    D.    Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divested Business as an independent, economically viable and competitive, ongoing business, consistent with the requirements of Sections VI(A) and VI(B).

    E.    Defendants shall take all steps necessary to ensure that the assets of the Divested Business are fully maintained in operable condition at no less than capacity and sales levels as of the

date of the acquisition of the first share by Inco, and shall maintain and adhere to normal product improvement and upgrade and repair and maintenance schedules for each of those assets.

F. Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge or otherwise dispose of any assets of the Divested Business.

G. Defendants shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of the Divested Business.

H. Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divested Business.

I. Defendants' employees with exclusive or primary responsibility for the research, development, operation, and sale of Nikkelverk Refinery Products and procurement of Feedstock from third parties for the Divested Business shall not be transferred or reassigned to other areas within Inco or Falconbridge, except for transfer bids initiated by employees pursuant to defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days notice of any such transfer.

J. Within ten (10) days of the Acquisition of Falconbridge, defendants shall appoint, subject to the approval of the United States, a person or persons to oversee the Divested Business, who will also be responsible for Inco's and Falconbridge's compliance with this section. This person or persons shall have complete managerial responsibility for the Divested Business, subject to the provisions of the Final Judgment. In the event that any such person is unable to perform his or her duties, defendants shall appoint, subject to the approval of the United States, a replacement

within ten (10) working days. Should defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement at defendants' expense.

K.   Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestiture and make arrangements for secure sources of Feedstock pursuant to the Final Judgment to an Acquirer acceptable to the United States.

L.   This Hold Separate Stipulation and Order shall remain in effect until consummation of the divestiture required by the proposed Final Judgment or until further order of the Court.

Dated June 23, 2006.

Respectfully submitted,

FOR PLAINTIFF
UNITED STATES OF AMERICA

/s/ Karen Phillips-Savoy

Karen Phillips-Savoy, Esquire
Maryland Bar
United States Department of Justice
Antitrust Division, Litigation II Section
1401 H Street, NW, Suite 3000
Washington, DC 20530
Telephone No.: (202) 307-0924

FOR DEFENDANT INCO LIMITED

/s/ John M. Taladay

John M. Taladay, Esquire
DC Bar # 426781
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
Telephone No.: (202) 383-6564

FOR DEFENDANT FALCONBRIDGE
LIMITED

/s/ David C. Gustman

David C. Gustman, Esquire
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606-6677
Telephone No.: (312)360-6515

ORDER

IT IS SO ORDERED by the Court, this ____ day of _____ 2006.

_____
United States District Judge